IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD CLEMENT, | ) | CASE NO. 1:13-CV-389 |
| | ) | |
| Petitioner, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BENNIE KELLY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Reginald Clement ("Clement") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.  Clement is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Clement*, Case No. CR-518986 (Cuyahoga County Feb. 23,

2010). (2/23/2010 Journal Entry, Doc. No. 8-1 at Ex. 13.)  For the reasons set forth

below, it is recommended that Clement's petition be dismissed with prejudice.

**I. Factual Background**

The state appellate court reviewing Clement's direct appeal noted the following

relevant facts:

> On November 30, 2008, Dominic Rodgers ("Dominic"),
> Alfred Rodgers ("Alfred"), and their cousin Demetrius
> Williams ("Demetrius") were together at the Rodgers' house
> located on South Green Road in South Euclid. They wanted
> to buy some marijuana, so Dominic called Gregory Williams
> ("Gregory"), a known marijuana dealer.  The men decided to
> rob Gregory to get his money and marijuana.  Demetrius
> invited Reginald Clement ("Reginald") to the Rodgers' house

and together they picked up Lavonte [Green ("Lavonte")]and returned to the Rodgers' house. Reginald and Lavonte both had guns.

When Gregory and his friend Tramel Wallace ("Tramel") pulled into the Rodgers' driveway to deliver the marijuana, Alfred, Demetrius, Reginald, and Lavonte came out of the house to meet them. Gregory, who was seated in the front passenger seat, opened his window.  Tramel [later] testified [at the trial of Lavonte] that one of the men, later identified as Lavonte, hopped into the backseat of the car, pointed a gun at Gregory, and said: "You know what this is?"  Gregory grabbed the gun as he climbed into the backseat and struggled with Lavonte to get the gun from him.  Reginald, who also held a gun, stood at the open passenger window. As Lavonte and Gregory were wrestling in the backseat, Lavonte's gun discharged, shattering the rear window. Tramel backed the vehicle out of the driveway, and Reginald followed them on foot. When Tramel stopped to drive forward, Reginald stuck his arm in the open window and shot Gregory.

Reginald fired five or six more shots at the car as Tramel drove away.  Lavonte and Gregory continued fighting in the backseat despite Gregory's wound.  Moments later, Lavonte jumped out of the moving car, leaving his gun behind, and Tramel drove to the nearest police station.  An ambulance transported Gregory to the hospital where he died from a gunshot wound to his chest.

*State v. Clement*, No. 94869, 2011 WL 1168133, *1-2 (Ohio Ct. App. March 31, 2011)

(quoting *State v. Green*, No. 94634, 2011 WL 304847, *1 (Ohio Ct. App. Jan. 27, 2011).

## II. State Procedural History

### A.    Trial Court Proceedings

On December 15, 2008, a Cuyahoga County grand jury issued an indictment charging Clement with, in relevant part: (Count 1) aggravated murder, purposely causing the death of Gregory Williams, with prior calculation and design, with felony

murder and firearm specifications; (Count 2) aggravated murder, purposely causing the death of Williams during the commission of an aggravated robbery, with felony murder and firearm specifications; (Count 3) aggravated robbery of Williams, involving a deadly weapon, with a firearm specification; (Count 4) aggravated robbery of Williams, inflicting or attempting to inflict serious physical harm, with a firearm specification; (Count 5) aggravated robbery of Tramel Wallace, involving a deadly weapon, with a firearm specification; (Count 6) kidnaping Williams, with a firearm specification; and (Count 7) kidnaping Williams, with a firearm specification.  (Indictment, Doc. No. 8-1 at Ex. 1.)

During Clement's trial, Tramel Wallace, who had driven Gregory Williams to the scene of the shooting, testified regarding the events of that day.  (Trial Transcript ("Tr.") at 291-92.)  Wallace had not previously been able to identify Clement as the shooter and, when it appeared that he was about to make such an identification during his testimony, defense counsel objected.  (Id. at 295.)  After a discussion with counsel and after questioning Wallace regarding his ability to identify Clement, the trial court instructed Wallace to testify truthfully regarding whether he could testify that Clement was the shooter.  (Id. at 299-308, 312-15.)  The trial court denied Clement's request for a mistrial, reasoning that Wallace's testimony had not prejudiced Clement.  (Id. at 311-12.)  Wallace did not thereafter identify Clement during his testimony.

The State elicited testimony from Alfred Rodgers, who had been present at the shooting and who had testified during the earlier trial of Lavonte Green.  (Tr. 631-40.)  When Rodgers testified that Clement had not approached the side of the car in which Williams was riding, the State read from the transcript of his testimony at Green's trial, during which Rodgers had testified that Clement approached the car and stuck a

3

firearm through the passenger side window.  (Tr. 668-77.)

On February 3, 2010, the jury found Clement guilty of the lesser-included offense of murder on the first count of the indictment, and guilty of Counts 2 through 4 and 6 and 7, as charged in the indictment.  (Tr. at 1025-28.) The jury found each of the felony murder and firearm specifications alleged in the indictment.  (*Id*.)  The jury acquitted Clement of count 5 of the indictment, charging him with the aggravated robbery of Wallace.  (*Id*. at 1027.)

After a mitigation hearing, the jury recommended a sentence of imprisonment of 30 years to life.  (2/22/2010 Journal Entry, Doc. No. 8-1 at Ex. 12.)  On February 23, 2010, the trial court sentenced Clement to a term of imprisonment of 36 years to life, consisting of: (1) 30 years to life on Count 2 – aggravated murder during an aggravated robbery –  with Counts 1, 3, 4 and 6 merging into the verdict on Count 2; (2) a three-year term of imprisonment on Count 7 – kidnaping Wallace – to run consecutively to the term of imprisonment imposed on the other counts; and (3) a three-year term of imprisonment on the firearm specifications, which merged together by operation of law, to run consecutively to the terms of imprisonment imposed on the other counts.  (2/23/2010 Journal Entry, Doc. No. 8-1 at Ex. 13.)

**B.    Direct Appeal**

On March 23, 2010, Clement, through new counsel, filed a timely notice of appeal from the state trial court's judgment.  (March 2010 Notice of Appeal, Doc. No. 8-1 at Ex. 14.)  On appeal, he raised the following assignments of error:

I.    The trial court erred in admitting Appellant's statement in to evidence as the statement was involuntary in violation of the Fourth Amendment.

4

> II.    The trial court erred in allowing the State to offer evidence of prior inconsistent statements of the State's own witnesses.
>
> III.   The trial court erred in denying Appellant's Criminal Rule 29 motion for acquittal on all counts as there was insufficient evidence to prove identity.
>
> IV.    The Appellant's convictions were against the manifest weight of the evidence as there was no adequate evidence of identification.

(*Direct Appeal Brief, Doc. No. 8-1 at Ex. 15.*)  Although Clement cited to the Fourth Amendment in the heading of his first assignment of error, in the body of his brief, Clement argued that the admission of his statement into evidence at trial violated the Fifth Amendment and his right to due process of law under the Fourth Amendment.  (*Id. at 2-4.*)

On March 31, 2011, the state appellate court affirmed the judgment of the trial court.  *See Clement*, 2011 WL 1168133 at *5.  With respect to the first assignment of error, the appellate court discussed the circumstances surrounding Clement's statement, and determined that there was "no evidence of any coercive activity by the police" in obtaining the statement.  *Id. at *3.*  The court overruled Clement's second assignment of error, concluding that the trial court had not erred in allowing the state to introduce Alfred Rodgers's prior inconsistent statements into evidence at trial because Alfred had made the prior statements during testimony at an earlier trial, while Alfred was under oath and subject to cross examination and the penalty of perjury.  *Id. at 4.*  Finally, considering Clement's third and fourth assignments of error together, the appellate court concluded that there was sufficient evidence to support Clement's conviction, summarizing the evidence and noting, "Here, the evidence at trial revealed

5

that [Clement] conspired with the co[-]defendants to rob [Williams] and that [Williams] was killed during the robbery." *Id.* at 5.

On May 13, 2011, Clement filed a notice of appeal in the Ohio Supreme Court, as well as a memorandum in support of jurisdiction, in which he raised the following propositions of law:

> I.    A defendant is denied [his] constitutional rights under the Fifth and Sixth Amendment[s] where his statement is involuntary and in violation of his constitutional rights.
>
> II.   A defendant has been denied his constitutional rights of confrontation and cross-examination when the court allows a statement of a witness to be used as substantive evidence rather than limiting it to impeachment evidence.
>
> III.  A defendant has been denied due process of law where he is convicted of offenses for which he had not been identified as the perpetrator.

(May 2011 Memorandum in Support of Jurisdiction, Doc. No. 8-1 at Ex. 19.)  On July 6, 2011, the Ohio Supreme Court declined jurisdiction and dismissed Clement's appeal. *State v. Clement*, 949 N.E.2d 1005 (Table), 129 Ohio St.3d 1412 (Ohio 2011).

**C.    Ohio Appellate Rule 26(B) Application**

On June 24, 2011 – while Clement's notice of appeal was pending in the Ohio Supreme Court – Clement, through counsel, filed an application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Rule 26(B) Application, Doc. No. 8-1 at Ex. 22.)  In his application, Clement incorrectly asserted that he had been represented by the same counsel at trial and on appeal.  (*Id.* at 1.) He argued that appellate counsel was ineffective in failing to raise the following issues

6

on appeal:

> I. Defendant was denied due process of law when the court, in a capital case, refuses to instruct on lesser included offenses of manslaughter and reckless homicide.
>
> II. Defendant was denied due process when the court failed to instruct the jury that the pleas of guilty of Defendant's co-defendants could not be considered as substantive evidence of Defendant's guilt.
>
> III. Defendant was denied due process of law when the court allowed Defendant to be convicted as an aider and abettor without any requirement that the Defendant possess a culpable mental state.
>
> IV. Defendant was denied due process of law when the court instructed on flight.
>
> V. Defendant was denied effective assistance of counsel.
>
> VI. Defendant was denied due process of law when he was sentenced for aggravated murder when the jury returned a verdict of a lesser offense of murder.
>
> VII. Defendant was denied due process of law when the court overruled a motion for a mistrial where there was a blatant discovery violation.

(Rule 26(B) Application, Doc. No. 8-1 at Ex. 22.)  Specifically, with respect to his claim of ineffective assistance of counsel, Clement argued that his trial counsel was ineffective in failing to: (1) object to the trial court's instruction on aiding and abetting; (2) request an instruction on identification, specifically with respect to Wallace's testimony; and (3) file a motion to suppress Dominic Rodgers's identification of Clement.  (*Id.* at 7.)  The State opposed Clement's Rule 26(B) Application, arguing that Clement's claims were barred by *res judicata* and that they lacked merit.  (State's

7

Opposition to Rule 26(B) Application, Doc. No. 8-1 at Ex. 23.)

On February 13, 2012, the state appellate court denied Clement's Rule 26(B) application. *State v. Clement*, No. 94869, 2012 WL 504199 (Ohio App. Ct. Feb. 13, 2012). The court addressed Clement's claims on the underlying merits, and found each lacked merit and, thus, that Clement's appellate counsel was not ineffective in failing to raise them on direct appeal. *Id.* at *2-4. With respect to Clement's first argument, the court concluded that, "Clement's acts of pursuing the car, sticking the gun into the window and shooting [Williams] at close range show intent and purpose inconsistent with reckless homicide or manslaughter. The evidence does not support such charges." *Id.* at 2. With respect to Clement's argument based on testimony regarding Alfred Rodgers's guilty plea and Dominic Rodgers's conviction, the court determined that, because testimony regarding Alfred Rodgers's plea was introduced for proper purposes and because the State had not emphasized the fact of Dominic Rodgers' conviction, the trial court was not required to admonish the jury that their pleas could not be considered as substantive evidence. *Id.* at *2-3. The court overruled Clement's third assignment of error, noting that the trial court had given "a full instruction on 'purpose' when giving the jury charge on aiding and abetting." *Id.* at 3. The state appellate court concluded that the trial court had not erred in it's instruction on flight – the basis for Clement's fourth assignment of error – noting that Clement's argument relied on "several old cases," and that "the current view" permitted the trial court's instruction where there was sufficient evidence to support it. *Id*.

The appellate court concluded that Clement's ineffective assistance of counsel

8

claim based trial counsel's failure to object to the aiding and abetting instruction lacked merit because the trial court did not err in giving the instruction. *Id*.  With respect to the ineffective assistance claim based on counsel's failure to request an instruction on identification after Wallace's testimony, the appellate court declined to "second guess trial counsel's strategy and tactics on this point," and noted that the trial court "did instruct the witness to testify to the truth which would be that he could not identify the shooter." *Id*. With respect to Clement's third basis for alleging ineffective assistance – that trial counsel should have filed a motion to suppress Dominic Rodgers's identification of Clement – the state appellate court determined that Clement failed to establish the requisite prejudice, noting that the trial court had conducted "an extensive voir dire of at trial on Dominic's ability to identify Clement and ruled that Dominic in fact knew Clement because there was a relationship between them. . . .  There is no reason to believe that moving to suppress the identification before trial could have changed the judge's ruling." *Id*. at 4.

The appellate court overruled Clement's sixth assignment of error – based on Clement's argument that his conviction for murder on Count One was inherently inconsistent with his conviction for aggravated murder on Count Two such that the trial court should not have sentenced him on Count Two.  The court reasoned that "evidence supports the finding that Clement purposely killed [Williams] during a robbery or attempted robbery.  It is also understandable how on these facts a jury might conclude that the state had not proven the element of prior calculation and design beyond a reasonable doubt." *Id*.  The court rejected Clement's final argument – that the trial court erred in failing to grant his motion for a mistrial based on Wallace's near-

9

identification of Clement during his testimony after the State had informed Clement during discovery that Wallace would not be making any identification.  The court concluded that Clement could not establish the requisite prejudice, noting, "[d]efense counsel was able to timely object and prevent Wallace from identifying Clement as the shooter." *Id*.

On February 26, 2012, Clement filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court, in which he reiterated each claim raised in his Rule 26(B) Application.  (February 2012 Notice of Appeal, Doc. No. 8-1 at Ex. 25; February 2012 Memorandum in Support of Jurisdiction, Doc. No. 8-1 at Ex. 26.) On May 23, 23, 2012, the Ohio Supreme Court declined jurisdiction and dismissed Clement's appeal. *State v. Clement*, 967 N.E.2d 765 (Table), 131 Ohio St.3d 1555 (Ohio 2012).

**D.  Motion for a New Trial/Petition for Post Conviction Relief**

On July 8, 2011 – while his Rule 26(B) Application was pending – Clements filed in the state trial court a motion for a new trial, pursuant to Ohio Criminal Rule 33, or, in the alternative, a petition for post conviction relief pursuant to Ohio Revised Code 2953.21.  (New Trial Motion/Post-Conviction Petition, Doc. No. 8-1 at Ex. 29.) Clements argued that he was entitled to a new trial or post conviction relief on the basis of new evidence, namely an affidavit from Demetrius Williams, asserting that Clements was not involved in the death of Gregory Williams and had not been present at the scene of the shooting on November 30, 2008.  (*Id*.)

On October 24, 2011, the trial court denied Clement's request for relief, finding

that Clements had failed to timely request either a new trial or post conviction relief.

(October 24, 2011 Journal Entry, Doc. No. 8-1 at Ex. 31.)  Further, the trial court noted

that Clement had offered no argument to demonstrate either why he was unavoidably

delayed in seeking a new trial, or why his petition for post conviction relief fell within

statutory exceptions to the relevant time requirements.  (*Id.*)

On February 10, 2012, Clements filed a notice of appeal in the state appellate

court, arguing that neither Clements nor his counsel had received notice of the trial

court's October 24, 2011 ruling.  (February 2012 Notice of Appeal, Doc. No. 8-1 at Ex.

32.)[1]  On March 30, 2012, Clement filed a brief on the merits, arguing that the trial court

had denied him due process of law when it declined to grant him either a new trial or

post conviction relief where he offered an affidavit attesting to his innocence.  (March

2012 Appellate Brief, Doc. No. 8-1 at Ex. 33.)

On August 23, 2012, the state appellate court affirmed the trial court's judgment.

*State v. Clement*, No. 97930, 2012 WL 3612263 (Ohio App. Ct. Aug. 23, 2012).  The

appellate court concluded that the trial court was correct in determining that Clement

had failed to offer any argument or other evidence to excuse the untimeliness of his

requests for relief.  *Id.* at *1-2.  On September 4, 2012, Clement filed a motion for

reconsideration in the state appellate court, which the court denied on September 12,

2012.  (Motion for Reconsideration, Doc. No. 8-1 at Ex. 36; September 12, 2012

---

[1] On January 13, 2012, Clement filed in the trial court a motion to vacate it's October
24, 2011 order, arguing that he had not received any notice of the order.  (Motion to
Vacate, Doc. No. 8-1 at Ex. 43.)  On April 10, 2012, the trial court denied the motion, noting
that its decision on the motion for a new trial/petition for post conviction relief was then
pending in the state appellate court.  (April 10, 2012 Journal Entry, Doc. No. 8-1 at Ex. 45.)

Journal Entry, Doc. No. 8-1 at Ex. 38.)

On October 15, 2012, Clement filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court, reiterating his argument that the trial court had denied him due process of law in declining to grant his request for a new trial or post conviction relief.  (October 2012 Notice of Appeal, Doc. No. 8-1 at Ex. 39; October 2012 Memorandum in Support of Jurisdiction, Doc. No. 8-1 at Ex. 40.)  On January 23, 2013, the Supreme Court declined jurisdiction and dismissed Clement's appeal.  *State v. Clement*, 981 N.E.2d 886 (Table), 134 Ohio St.3d 1421 (Ohio 2013).

### III.  Proceedings in This Court

On February 22, 2013, Clement, through counsel, filed a timely § 2254 petition in this Court.  (§ 2254 Petition, Doc. No. 1.)[2]  He raises the following twelve grounds for relief:

> I.   Fifth and Sixth Amendment[s]: Petitioner was denied his constitutional rights under the Fifth and Sixth Amendment[s] where any statement that he gave to the police was voluntary and violated his constitutional rights.
>
> II.  Sixth Amendment: Petitioner was denied his right of confrontation and cross-examination when the trial court allowed a statement from a witness to be used as substantive evidence rather than limiting the use of that evidence to impeachment only.
>
> III. Fourteenth Amendment: Petitioner was denied due process of law when he was convicted at trial of offenses for which he had not been identified as being the perpetrator.
>
> IV.  Sixth Amendment: Petitioner was denied effective

---

[2]   The State does not dispute that Clement's petition is timely.

12

assistance of appellate counsel when counsel failed to raise various issues that were apparent upon the face of the record.

V.     Sixth and Fourteenth Amendment[s]: Petitioner was denied due process of law where had been indicted in a capital case and the trial court refused to instruct on lesser included offenses of manslaughter and/or reckless homicide.

VI.     Fourteenth Amendment: Petitioner was denied due process of law when the court failed to instruct the jury that a plea of guilty of a testifying co-defendant could not be considered as substantive evidence of petitioner's guilt.

VII.     Fourteenth Amendment: Petitioner was denied due process of law when the court allowed petitioner to be convicted as an aider and abettor without any requirement that petitioner possessed the culpable mental state needed for the commission of the offense.

VIII.     Fourteenth Amendment: Petitioner was denied due process of law and a fair trial when the court instructed the jury on the non-element of flight when it was not applicable to this case.

IX:     Sixth Amendment: Petitioner was denied effective assistance of trial counsel when trial counsel failed to object or preserve issues which occurred during the course of the trial.

X.     Fourteenth Amendment: Petitioner was denied due process of law when the court sentenced petitioner for aggravated murder when the jury returned a verdict of guilty of the lesser offense of murder.

XI     Fifth, Sixth and Fourteenth Amendment[s]: Petitioner was denied due process of law when the court overruled a motion for a mistrial where the prosecutor failed to timely notify counsel of discovery which was beneficial to petitioner.

XII.     Fourteenth Amendment: Petitioner was denied due

13

> process of law when the court denied petitioner a new
> trial based on newly discovered evidence which
> showed that petitioner was actually innocent of the
> offense.

(§ 2254 Petition, Doc. No. 1.)  The State filed its Answer/Return of Writ (doc. no. 8),

and, thereafter, Clement filed his Traverse (doc. no. 9).  Accordingly, the petition is

ready for decision.

## IV. Procedural Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The

Court of Common Pleas of Cuyahoga County, Ohio sentenced Clement.  (February 23,

2010 Journal Entry, Doc. No. 8-1 at Ex. 13.)  Cuyahoga County is within this Court's

geographic jurisdiction.  *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction

over Clement's petition.

### B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas

corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349

(1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state

procedures for relief remain available, the petitioner has not exhausted his state

remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155,

14

160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest

court in the state in which petitioner was convicted has been given a full and fair

opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d

878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review  "contentions of federal law . . .  not

resolved on the merits in the state proceeding due to respondent's failure to raise them

there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

When a petitioner "has defaulted his federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is

barred unless the prisoner can demonstrate cause for the default and actual prejudice

as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*,

501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state
> procedural rule that is applicable to the petitioner's claim and
> that the petitioner failed to comply with the rule. . . . Second,
> the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court
> must decide whether the state procedural forfeiture is an
> "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
> . . . This question generally will involve an examination of the
> legitimate state interests behind the procedural rule in light
> of the federal interest in considering federal claims. . . .
> [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate

15

> and independent state ground, then the petitioner must
> demonstrate . . . that there was "cause" for him to not follow
> the procedural rule and that he was actually prejudiced by
> the alleged constitutional error.

Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986).

The State argues that Clement has procedurally defaulted the Sixth Amendment portion of his claim in ground one (Sixth Amendment Involuntary Statement), and the entirety of his claims in grounds four (Ineffective Assistance of Appellate Counsel) and twelve (Denial of Due Process - Actual Innocence).

### 1.    Ground One - Sixth Amendment - Involuntary Statement

Clement argues in his first ground for relief that the trial court violated his Fifth and Sixth Amendment rights when it allowed his statement to the police to be admitted into evidence at trial.  Clement submits the conclusory assertion that the issue was properly presented.  The State correctly points out that, although Clement raised this claim in his direct appeal, he so in the context of the Fifth Amendment.  Clement's state court appellate brief does not raise this issue in the context of the Sixth Amendment.  Accordingly, Clement failed to exhaust his Sixth Amendment claim in state court.

Generally, where a claim is unexhausted, this Court dismisses the habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  See 28 U.S.C. § 2254(c); Rose v. Lundy, 455 U.S. 509 (1982). However, in this case, Clement's Sixth Amendment claim based on his allegedly involuntary statement to police is also procedurally defaulted.  This claim arises out of the record of proceedings in the trial court and, thus, Clement could have raised it on direct appeal.  He failed to do so and, under Ohio law, res judicata now prohibits him

from raising the issue in any post-conviction proceeding.  *See State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal).  Thus, there are no longer any state court remedies available to Clement with respect to the Sixth Amendment portion of his claim and this Court may deem the claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac,* 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Because Clement procedurally defaulted the Sixth Amendment portion of his first ground for relief, this Court may review it only if he can demonstrate either cause and prejudice for the default*, see Gray*, 518 U.S. at 162 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[3] for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."), or that this Court's failure to review the merits of his claim will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750; *see also Schlup v. Delo*, 513 U.S. 298 (1995).

---

[3]  The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

17

Clement argues that, to the extent he has procedurally defaulted this claim, this Court should excuse his procedural default because there has been a fundamental miscarriage of justice in his case.  This narrow exception is available only "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." _Rust_, 17 F.3d at 162.  Clement asserts that this exception applies in his case because he is actually innocent of the crimes of which he was convicted.

A petitioner relying on actual innocence to overcome a procedural default faces a substantial burden, as "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" _House v. Bell_, 547 U.S. 518, 536-37 (2006) (quoting _Schlup_, 513 U.S. at 327).  A petitioner must advance new evidence not presented at trial to support a claim of actual innocence, but a court's determination as to whether a reasonable jury would have found the petitioner guilty should be based both on the new evidence and on the evidence presented at trial.  _House_, 547 U.S. at 537-38.  In addition, the standard permits review only in the extraordinary case: "'[I]n the vast majority of cases, claims of actual innocence are rarely successful.'" _Id._ at 538 (quoting _Schlup_, 513 U.S. at 324). Finally, if the asserted new evidence so requires, the court may include in its deliberations assessments of the credibility of witnesses in determining whether a reasonable jury would have convicted the petitioner.  _House_, 547 U.S. at 538-39.

Here, Clement relies on the affidavit of Demetrius Williams to support his claim of actual innocence.  In his affidavit, Demetrius stated that, when he was arrested after

18

Gregory Williams's death, prosecutors convinced him that it would be beneficial to him if he implicated Clement in the shooting.  According to Demetrius, he acquiesced to pressure from the prosecutors and falsely claimed that Clement was involved.  Demetrius asserted that Clement was neither present at the scene of, nor had any role in, Gregory Williams's murder.  (Affidavit of Demetrius Williams ("D. Williams Aff."), attached to New Trial Motion/Post Conviction Petition, Doc. No. 8-1 at Ex. 29.)

The affidavit falls far short of the standard necessary to support a claim of actual innocence in this context.  Demetrius's claim that Clement was not present at the scene of the shooting contradicts evidence presented at trial that Clement was present, and that Clement approached Gregory Williams's vehicle and pointed a firearm through the window of the passenger side door.  Further, at trial, a forensic investigator testified that she had discovered gun shot residue on the sleeve cuffs of Clement's jacket, which suggested that a firearm had been fired in close proximity to the jacket.  (Tr. at 575-76.) Given this testimony, as well as the forensic evidence suggesting that Clement was present at the shooting, Clement has failed to demonstrate that, in light of Demetrius's claims in the affidavit, it was more likely than not that the jury would have acquitted him. Accordingly, Clement fails to demonstrate that his procedural default of his Sixth Amendment claim in his first ground for relief should be excused, and this claim should be dismissed as procedurally defaulted.

### 2. Ground Four - Ineffective Assistance of Appellate Counsel

The State contends that Clement has procedurally defaulted his fourth ground for relief – that his appellate counsel was ineffective in failing to raise various issues that were apparent on the face of the record – because he did not properly raise this

19

claim in state court.  Specifically, the State contends that Clement did not "argue this general claim" in his Rule 26(B) Application and, thus, the claim is unexhausted and – because Clement can no longer raise it in state court – procedurally defaulted.  The State errs.  A review of Clement's Rule 26(B) Application reveals that he clearly raised the issue of ineffective assistance of appellate counsel, both in the introduction to the application, and throughout his counsel's affidavit in support.  Further, the state appellate court considered the claim of ineffective assistance of appellate counsel on its merits.  Accordingly, Clement has not defaulted this claim.[4]

---

[4] Clement raised his fifth through eleventh grounds for relief in his Rule 26(B) Application, arguing that his appellate counsel was ineffective in failing to assert those claims on direct appeal.  The State contends that these claims are not procedurally defaulted because the state appellate court considered them on their merits in the Rule 26(B) opinion.  In most cases, the failure to raise a claim on direct appeal compels the conclusion that these grounds for relief are unexhausted and procedurally defaulted because they cannot be raised on the merits for the first time in a Rule 26(B) Application. *See, e.g., Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original).  In this case, in addition to considering the issue of whether appellate counsel was ineffective, the state appellate court addressed the merits of the underlying claims in denying Clement's Rule 26(B) Application. *See Clement*, 2012 WL 504199.  In this Court's view, this "merits" analysis was decided in the context of the prejudice prong of *Strickland*.  However, it is arguable that the state appellate court "reject[ed] those claims on their merit" rather than "fram[ing] its rejection of [Clement's] underlying claims as a failure to find prejudice or on procedural grounds;" consequently, Clement's fifth through eleventh grounds for relief would not be procedurally defaulted. *James v. Brigano*, 470 F.3d 636, 641-42 (6th Cir. 2006) (finding that the petitioner's claims – which he had asserted as the bases for an ineffective assistance of appellate counsel claim in a Rule 26(B) application – were not procedurally defaulted because the state appellate court had "review[ed] both of [the petitioner's] claims on the merits").  This is a close question in this case.  Nevertheless, because the State does not contend that the claims are procedurally defaulted, this Court will consider them on their merits.

### 3.    Ground Twelve - Denial of Due Process - Actual Innocence

In his twelfth ground for relief, Clement contends that the trial court deprived him of due process when it denied his motion for a new trial based on evidence – the affidavit of Demetrius Williams – that he was innocent.  The State argues that, because the trial court denied Clement's motion as untimely filed, this claim is procedurally defaulted.

The State's argument is well taken, as Clement's claim is procedural defaulted under the four-step *Maupin* analysis.  With respect to the first step – whether there was a state procedural rule with which Clement failed to comply – both Ohio Rule of Criminal Procedure 33 and Ohio Revised Code 2953.21 set forth time limits within which a defendant must seek relief.  Rule 33 provides that, where a defendant seeks a new trial on the basis of newly discovered evidence, he must file a motion for a new trial "within one hundred twenty days after the day upon which verdict was rendered," unless he demonstrates by clear and convincing evidence that he was "unavoidably prevented" from discovering the evidence upon which he is relying.  Ohio R. Crim. P. 33(B).  Ohio's post conviction relief statute  requires defendants to file a motion for post-conviction relief within 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal."  Ohio Rev. Code § 2953.21(c)(2).  The statute contains two exceptions to the 180-day time limit.  One requires the defendant to show that he was "unavoidably prevented from discovery of the facts" upon which his claim for relief was based; the other requires him to demonstrate that his claim is based on a newly-recognized federal or state right that applies retroactively.  *See* Ohio Rev. Code § 2953.23(b)(2).   The record reveals that Clement failed to timely file his request under

both Rule 33 and § 2953.  Clement filed his motion/petition on July 8, 2011 – 520 days after February 3, 2010, the date on which the jury rendered its verdict in its case (February 3, 2010 Journal Entry, Doc. No. 8-1 at Ex. 11), and 431 days after May 3, 2010, the date on which the trial transcript was filed in the court of appeals in his direct appeal (Docket, Doc. No. 8-1 at Ex. 32).   Further, his motion/petition contained no explanation for the delay that might have required the trial court to apply any of the exceptions to the timeliness requirements in either the rule or the statute.

Second, it is evident from the trial court's October 24, 2011 entry that it applied the relevant procedural rules, as the trial court analyzed the timeliness requirements and concluded that Clement had not timely filed his request for relief.  (October 24, 2011 Journal Entry, Doc. No. 8-1 at Ex. 31.)  With respect to the third *Maupin* step, Clement does not dispute that a procedural rule imposing a firmly established and regularly followed time bar poses an independent and adequate state procedural bar to foreclose federal review.  *See, e.g., Fautenberry v. Mitchell*, 515 F.3d 614, 640-41 (6th Cir. 2008) (discussing the issue in the context of Rule 26(B) applications).  Finally, with respect to the fourth step in the *Maupin* analysis, Clement asserts his actual innocence as a basis for excusing the procedural default.  For the reasons already discussed with respect to his first ground for relief, this argument fails.  Accordingly, Clement's twelfth ground for relief should be dismissed as procedurally defaulted.

### V. The Merits of Clement's Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a

22

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id*. at 520-21 (internal citations and quotation marks omitted).

In determining whether the decision was based on an unreasonable determination of the facts in light of the evidence, a federal court applies a presumption of correctness to state court findings of fact, unless clear and convincing evidence is offered to rebut this presumption.  *See* 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  This Court applies these deferential standards of review to the state courts' rulings on Clement's various grounds for relief.

**1.     First Ground for Relief - Involuntary Statement - Fifth Amendment**

In his first ground for relief, Clement argues that the state trial court violated his Fifth Amendment rights when it denied his motion to suppress his statement to police officers.  During a pre-trial hearing on his motion to suppress, the State elicited the testimony of South Euclid Police Detective David Volek, who obtained the statement from Clement on December 3, 2008.  (Tr. at 205, Doc. No. 8-2.)  Volek testified as follows:

Volek, along with South Euclid Police Detective Gorski, questioned Clement at Huron Road Hospital.  (*Id*.)  He had learned through Clement's family that Clement was

24

hospitalized there for a gun shot wound.  (*Id*.)  He asked Clement's nurses whether

Clement was "okay for conversation" and they indicated that Clement was "fine, go

ahead and speak with him."  (*Id*. at 206.)  Upon arriving at Clement's room, Volek asked

Clement's family members to step outside.  (*Id*.)  Clement appeared to be "[a]lert,

coherent .  Not . . .under the influence of heavy narcotics."  (*Id*.)  Clement was sitting up

in bed, engaging in conversation with family members and friends, and engaged in

normal conversation with Volek.  (*Id*. at 208.)

Clement had an IV, and his right leg was wrapped in bandages.  (*Id*. at 209.)

Volek read Clement his rights using a rights form.  (*Id*.)  Clement indicated that he

understood each of the right enumerated on the form.  (*Id*. at 211-12.)  Clement then

signed the form, as did Volek.  (*Id*. at 212-13.)  Volek asked Clement who shot him and

how he ended up in the hospital, and after Clement told him, Clement agreed to make a

written statement.  (*Id*. at 213.)  On the first page of the statement, Clement indicated

that he was 18 years old.  (*Id*. at 216-17.)  At the end of the statement, Clement

indicated that he was not under the influence of alcohol, drugs or narcotics.  (*Id*. at

219.)

On cross-examination, Volek testified that a South Euclid police officer had been

stationed outside Clement's door at some point on December 3, 2008, prior to Volek's

arrival there.  (*Id*. at 224.)  He recalled that Clement had an open gun shot wound to his

right leg and that Clement had stated that he was in pain.  (*Id*. at 226-27.)  Medical

records from Clement's treatment at Huron Road Hospital reflected that, approximately

30 minutes prior to his interview with Volek, Clement had received two Percocets and

reported pain that he rated at an eight out of 10.  (*Id*. at 228.)  Volek recalled that Clement was in pain, but testified that Clement was "not moaning, groaning, and not every answer was followed with [']oh['] or anything like that."  (*Id*. at 229.)  Volek recalled that Clement was alert and coherent throughout the interview.  (*Id*. at 231.)

The trial court denied Clement's motion to suppress, noting that Clement had provided a "pretty lengthy one-paragraph statement" in his own handwriting, and had initialed responses indicating that he understood his rights.  (*Id*. at 232.)  In its decision affirming Clement's conviction, the state appellate court reviewed Volek's testimony and concluded, "there is nothing in the circumstances surrounding [Clement's] statement to support a finding that it was involuntary or made without full awareness."  *Clement, 2011 WL 1168133, *3*.

In his §2254 petition, Clement argues that the state appellate court's ruling "failed to follow federal law . . . or was an unreasonable determination of the facts" because, given the circumstances, Clement's waiver of his rights was not a free and deliberate choice.  Specifically, Clement notes that, at the time of his interview with Volek, he was 19 years old and hospitalized, undergoing treatment for a gun shot wound, which required treatment with narcotic pain medication.  He also points out that Volek directed his family members to leave the hospital room prior to the interview, and that a police officer had been posted outside his room.  Essentially, Clement claims that, under these circumstances, "any waiver . . . was not a free and deliberate choice."

Clement's argument lacks merit.  The state appellate court reasonably applied Supreme Court case law to Clement's claim.  It is well established that a defendant may waive his Fifth Amendment rights "provided the waiver is made voluntarily, knowingly

26

and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  The relevant inquiry "has two distinct dimensions," requiring a court to consider, first, whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception," and, second, whether the waiver was "made with a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).  Here, the state court analyzed the circumstances of Clement's waiver, and, noting that there was no evidence of coercion, concluded that Clement had voluntarily given his statement to Detective Volek. Although Clement notes various facts regarding the circumstances of his interview with Volek, he points to nothing in the record demonstrating that he was actually incapable of voluntarily relinquishing his Fifth Amendment rights.  Accordingly, the state court made a reasonable determination of the facts and reasonably applied the constitutional standard in determining that Clement's waiver of his rights was voluntary.  Nor does Clement identify any case law – federal or otherwise – holding that the circumstances of his waiver are *per se* involuntary.  Accordingly, the state appellate court neither failed to follow, or unreasonably applied, clearly established federal law, nor made an unreasonable determination of the facts of Clement's case, and this ground for relief should be dismissed for lack of merit.

27

### 2.     Second Ground for Relief - Witness's Prior Statements

Clement argues that the trial court deprived him of his right to confront and cross-examine a State's witness when it allowed the State to introduce the prior testimony of Alfred Rodgers.  At trial, the prosecutor attempted to elicit testimony from Alfred regarding the events that led up to the shooting.  (Tr. at 631-40, Doc. No. 8-4.) Alfred frequently responded to questions by indicating that he could not remember or did not know the answer, despite reviewing his statement to the police officers to refresh his recollection.  (*Id*. at 650.)  Eventually, the prosecutor requested permission to treat Alfred as a hostile witness, noting that Alfred had "previously testified for the State in the case of Lavonte Green.  His testimony here is significantly different in terms of what his memory is."  (*Id*. at 651-52.)  The trial court granted the prosecutor's request.  (*Id*. at 652-53.)  Alfred continued to testify that he did not know, or could not recall, the answers to questions, and occasionally denied saying what was contained in his written statement.  (*Id*. at 655-56.)  Eventually, the prosecutor asked Alfred whether he recalled testifying under oath at Green's trial.  (*Id*. at 656.)  After Alfred indicated that he recalled testifying, the prosecutor read from portions of the transcript of Alfred's prior testimony, and Alfred indicated that he could not recall his testimony from the earlier trial.  (*Id*. at 659.)

Later during his direct testimony at Clement's trial, Alfred identified Clement as an individual whom he knew as Reggie Smith.  (*Id*. at 659-60.)  Alfred testified that, on the day of the shooting, he did not see Clement approach Gregory Williams's vehicle. (*Id*. at 668.)  The prosecutor again read an excerpt of the transcript of Alfred's testimony

28

at Green's trial, in which Alfred had testified that Clement ran toward the side of
Gregory Williams's car, and pointed a gun into the passenger side window.  (*Id.* at 670,
672.)  Alfred testified that he did not recall his testimony at Green's trial.  (*Id.* at 672.)
Thereafter, the prosecutor read another excerpt from the transcript of Alfred's testimony
at Green's trial, in which Alfred had testified that he saw Clement point a gun into the
passenger side of the car, and follow alongside the vehicle as it was driving in reverse
down the driveway.  (*Id.* at 676-77.)

   In his direct appeal, Clement argued that Alfred's prior trial testimony was
hearsay and that the trial court improperly permitted the State to use that testimony as
substantive evidence, rather than impeachment evidence.  The state appellate court
rejected this argument, concluding that, under the Ohio Rules of Evidence, Alfred's
prior trial testimony was not hearsay because Alfred gave it under oath while subject to
cross-examination and under penalty of perjury at Green's trial.  *Clement*, 2011 WL
1168133 at *4.  Further, the court noted that such statements were admissible as
substantive evidence at trial because they had "several procedural guarantees of
trustworthiness," i.e., that Alfred was under oath and subject to cross-examination at the
time he made the statements.  *Id*.  The court also concluded that Alfred's prior
testimony was admissible because it was "subject to delayed cross-examination and
evaluation for demeanor at [Clement's] trial."  *Id*.

   In his § 2254 petition, Clement argues that the admission of Alfred's prior trial
testimony violated his right to confront and cross-examine Alfred, and permitted his
conviction on inadmissible evidence.  The State responds that, because Alfred was

available for cross-examination at trial, the state trial court did not err in allowing the admission of the prior testimony into evidence.  The State's argument is well taken, as the admission of Alfred's testimony did not violate Alfred's Sixth Amendment right to confrontation.

It is well established that the "primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415 (1965). Clement's argument can be construed to contend that the Confrontation Clause bars the admission of all out-of-court statements in a criminal trial.  Clement overstates the protections of the Sixth Amendment.   Rather, the Supreme Court has determined that such statements may be admitted where the declarant has been – or will be – subject to cross-examination.  Specifically, where a declarant is unavailable to testify, the Confrontation Clause requires "a prior opportunity for cross-examination" before such statements may be admitted into evidence. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  Where, as in this case, the declarant is "testifying as a witness and subject to full and effective cross-examination," the admission of his out-of-court statement does not violate the Confrontation Clause. *California v. Green*, 399 U.S. 149, 158 (1970); *see also United States v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008) ("As the Supreme Court held in [*Crawford*, 541 U.S. at 59, n.9], however, 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'")

Here, Alfred testified as a witness during Clement's trial.  Clement does not contend – and the record does not reflect – that he was denied the opportunity to fully cross-examine Alfred about his prior trial testimony.  Indeed, the record reflects that

30

Clement's trial counsel cross-examined Alfred at length – and asked him about the circumstances surrounding his testimony at Green's trial.  (Tr. at 703.)  Because Alfred testified at trial and was subject to cross-examination, the state court's admission of Alfred's prior testimony was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  This ground for relief should be dismissed as without merit.

### 3. Third Ground for Relief - No Identification Testimony

In his third ground for relief, Clement argues that he was denied due process of law when he was convicted without evidence identifying him as the perpetrator.  Where a petitioner alleges insufficient evidence to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Here, Clement argues that no witness at trial identified him as the "alleged offender."  Clement mischaracterizes the record.  In his prior trial testimony – which the trial court properly admitted into evidence at Clement's trial – Alfred Rodgers identified Clement as the individual who pointed a gun into the passenger side of Gregory Williams's vehicle.  (Tr. at 670, 672.)  Dominic Rodgers testified that he saw Clement running beside Williams's vehicle.  (Tr. 442-47.)  A forensic investigator testified that she had discovered gun shot residue on the sleeve cuffs of Clement's jacket, which suggested that a firearm had been fired in close proximity to the jacket.  (Tr. at 575-76.)  Viewed in the light most favorable to the prosecution, a rational jury could conclude that

Clement was the individual who pointed a weapon into the passenger side window of Williams's car.  In its decision affirming Clement's conviction, the state appellate court identified this evidence as sufficient to prove Clement's identity as the perpetrator of the offenses for which he was convicted.  *Clement*, 2011 WL 1168133 at \*4-5.  Other than the conclusory assertion that there was no evidence identifying him as the perpetrator, Clement fails to explain how the state court's decision on this issue was either contrary to, or an unreasonable application of, *Jackson* or any other Supreme Court case law. Accordingly, this ground for relief lacks merit.[5]

### 4.      Grounds Four Through Nine

In his fourth ground for relief, Clement asserts that his appellate counsel was ineffective for failing to raise various claims on appeal.  Specifically, he contends that his appellate counsel was ineffective in failing to argue that: (1) the trial court erred in declining to instruct the jury on the lesser included offenses of manslaughter and reckless homicide; (2) the trial court erred in failing to instruct the jury that the guilty pleas of Clement's co-defendants could not be considered substantive evidence of Clement's guilt; (3) the trial court erred in allowing Clement to be convicted as an aider and abettor without any requirement that he possess a culpable mental state; (4) the trial court erred in instructing the jury on flight; and (5) Clement received ineffective

---

[5] In the text of his argument on this issue, Clement asserts that "[e]ven if considered sufficient, this would be against the manifest weight of the evidence."  (Traverse at 10, Doc. No. 9.)  It is well established, however, that a petitioner's claim that his conviction was against the manifest weight of the evidence is non-cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, \*6-7 (S.D. Ohio July 25, 2006).

assistance of trial counsel[6] when his counsel failed to: (a) object to the trial court's instruction on aiding and abetting; (b) request an instruction on identification; and (c) file motion to suppress Dominic Rodgers's identification of Clement.

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to *de novo* review."

---

[6] Generally, under Ohio law, *res judicata* bars a defendant from raising a claim of ineffective assistance of trial counsel in his Rule 26(B) application where that defendant was represented by different counsel at trial and on direct appeal.  *See, e.g., State v. Houston*, 652 N.E.2d 1018, 1019-20, 73 Ohio St.3d 346, 347 (Ohio 1995).  In this case, however, in his Rule 26(B) Application, Clement erroneously claimed that he had been represented by the same counsel at trial and in his direct appeal.  (Rule 26(B) Application, Doc. No. 8-1 at Ex. 22.)  The state appellate court made no finding on this issue, but, instead, applied the *Strickland* standard to Clement's claims of ineffective assistance of trial counsel.  Accordingly, these claims of ineffective assistance of trial counsel are not procedurally defaulted.

*Combs. v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

In grounds five through nine, Clement asserts the individual bases for his ineffective assistance of appellate counsel claims as independent bases for habeas relief.  In its decision denying Clement's Rule 26(B) Application, the state appellate court apparently considered both the independent merits of these claims and whether, under the *Strickland*, analysis, the alleged errors constituted ineffective assistance of counsel.  In each instance, the appellate court determined that the claim had no independent merit and, thus, Clement was not prejudiced by his counsel's failure to raise the issue on direct appeal.  Because the State contends this is a merits determination of the underlying claims that precludes application of procedural default and the appellate court's decision is not entirely clear, this Court will consider, first, whether each independent claim has merit and, second, if so, whether failing to raise that claim on appeal constituted ineffective assistance of appellate counsel.  *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.")

## A.    Lesser-Included Offenses (Fifth Ground for Relief)

During trial, Clement requested that the trial court instruct the jury on the lesser included offenses of, *inter alias*, murder, manslaughter and reckless homicide.  (Tr. 884.)  After considering arguments from both sides, the trial court agreed to instruct the jury on murder, but declined to instruct on manslaughter and reckless homicide.  (*Id*. at 893.)

In considering this issue in Clement's Rule 26(B) Application, the state appellate

34

court concluded that "[t]he evidence did not support" charges of manslaughter and reckless homicide, and, thus, there was no error in failing to give instructions on those offenses.  *Clement*, 2012 WL 204199 at *2.  In his habeas petition, Clement argues that he was entitled to lesser included offense instructions because his was a capital case, and including those instructions would have given the jury the alternative to convict him of an offense other than murder or aggravated murder.  He also argues that his appellate counsel was ineffective in failing to raise this claim on direct appeal.

Clement relies on the Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625, 638 (1980), in which the Court concluded, in a capital case, that it is a denial of due process for a state law to deprive the jury of the opportunity to consider the lesser-included offense of felony-murder because "the unavailability of a lesser-included offense instruction enhances the risk of an unwarranted conviction."  Clement argues that *Beck* requires a state trial court, in a capital case, to instruct the jury on every lesser-included offense.  Clement overstates the scope of the Supreme Court's holding in *Beck*.  In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), decided two years later, the Court acknowledged and clarified its holding in its earlier decision: "*Beck* held that due process requires that a lesser-included offense instruction be given when the evidence warrants such an instruction.  But due process requires that a lesser-included offense instruction be given *only* when the evidence warrants such an instruction." (emphasis in original.)

Here, the state appellate court determined that the trial court properly declined to instruct the jury on the lesser-included offenses of manslaughter and reckless homicide

35

because the evidence at trial did not support these offenses.  This analysis is a correct and reasonable application of established Supreme Court case law on this issue.  In his habeas petition, Clement does not discuss the evidence at trial, or explain how that evidence supported the lesser-included offenses he requested.  Accordingly, this claim lacks merit as an independent ground for relief.

This claim also lacks merit as the basis for ineffective assistance of appellate counsel.  Ohio law requires a trial court to give instructions on a lesser-included offense "only if the evidence adduced at trial would support it." *State v. Thomas*, 533 N.E.2d 286, 289, 40 Ohio St.3d 213, 216 (Ohio 1988).  The state appellate court determined that the evidence at trial did not support the offenses of reckless homicide and manslaughter.  Clement does not explain how the evidence at his trial supported an instruction on either of these offenses.  Nor did he do so in his Rule 26(B) Application.  Accordingly, Clement has not demonstrated that, had his appellate counsel raised this claim, it would have succeeded on appeal.  Thus, the state court's determination that Clement was not prejudiced by his counsel's alleged error in this context was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

### B.  Co-Defendants' Pleas (Sixth Ground For Relief)

During Clement's trial, the prosecutor elicited testimony from Dominic Rodgers that Dominic had been convicted of being an accessory to manslaughter as a result of the events of November 30, 2008.  (Tr. 391.)  Similarly, Alfred Rodgers testified that he had pleaded guilty to manslaughter and received an 18-year term of imprisonment.  (Tr. 631-32.)  In its jury instructions, the state trial court gave the following instruction regarding the testimony of Alfred and Dominic:

36

> Now, ladies and gentlemen, you heard some testimony of accomplices, and you have heard from other persons who pled guilty in this case or were accused of the same crimes charged in this case and again were said to be accomplices.
>
> An accomplice is one who purposely or knowingly assists or joins another in the commission of a crime, and whether he was an accomplice . . . and the weight to give his testimony are matters for you to determine from all the facts and circumstances in evidence.
>
> The testimony of an accomplice does not become inadmissible because of his complicity, his moral turpitude or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion and require that it be weighed with great caution.
>
> It is for you, as juror, in light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
>
> An accomplice may have special motives in testifying and you should carefully examine an accomplice's testimony and use it with great caution and view it with grave suspicion.

(Tr. 941-42.)  In his habeas petition, Clement argues that the trial court deprived him of due process when it failed to instruct the jury that Alfred and Dominic's guilty pleas and convictions did not constitute substantive evidence of his guilt.  He also argues that his appellate counsel was constitutionally ineffective in failing to raise this issue on direct appeal.

A federal habeas court may not review an error in instructions given to the jury unless the error deprived the petitioner of due process.  *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003).  The relevant question in this context is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

37

process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  Therefore, to warrant relief under § 2254, "jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008).

Here, Clement argues that the trial court erred in omitting an instruction advising the jury that his co-defendants' guilty pleas were not substantive evidence of his guilt. The significance of this omission is best evaluated by comparing Clement's requested instruction with the instruction that the trial court gave to the jury.  Although the trial court did not specifically advise the jury regarding whether the guilty pleas were substantive evidence, it did advise the jury that the fact that Alfred and Dominic had pleaded guilty could have a negative effect on their credibility.  Further, the court cautioned the jury that Dominic and Alfred might have had "special motives" for testifying.  The court advised the jury to "carefully examine" their testimony, to use it only with "great caution," and to examine it with "grave suspicion."  Given this instruction, in which the trial court instructed the jurors to be circumspect about the other defendants' motives for testifying, and to carefully consider their testimony, Clement has failed to demonstrate that the guilty pleas of those defendants in any way affected the outcome of the case.  Further, Clement does not explain how the jury instruction given by the trial court on this issue – or the absence of the instruction he suggests – rendered his trial fundamentally unfair.  The state appellate court's decision on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

Clement has also failed to demonstrate that his appellate counsel was ineffective

38

in failing to raise this issue on direct appeal.  Under Ohio law, the admission of a co-defendant's guilty plea without a limiting instruction is not reversible error if defense counsel does not request an instruction and if the evidence was introduced for a proper purpose, such as impeaching a witness or demonstrating that the State has nothing to hide in its plea agreements.  *State v. Karstone*, No. 95104, 2011 WL 1584116, *6 (Ohio App. Ct. Apr. 21, 2011).  In its decision denying his Rule 26(B) Application, the state appellate court noted that the State introduced the guilty pleas "for proper purposes" and that "the prosecutor did not emphasize the guilty plea or Dominic's conviction." *Clement*, 2012 WL 204199 at *3.  Clement has not demonstrated that he was prejudiced by his appellate counsel's failure to raise this claim on direct appeal, and, thus, he fails to establish that his counsel's assistance was constitutionally deficient under the *Strickland* standard.

### C.      Instruction on Aiding and Abetting (Ground Seven)

In ground seven of his habeas petition, Clement contends that the trial court deprived him of due process when it instructed the jury that it could convict him of aiding and abetting without finding that he possessed a culpable mental state.  Clement bases his argument, however, on only a portion of the state trial court's instructions on this issue.  After instructing the jury on the principal offenses with which Clement was charged, the state trial court instructed the jury on aiding and abetting, in relevant part, as follows:

> It is alleged that Mr. Clement aided and abetted another in
> the commission of the aggravated murder, aggravated
> robbery and kidnaping.

Aiding and abetting is when two or more persons have a common purpose to commit a crime and when one does one part and the other person performs the other part.

As to an aider and abettor only, the mere fact that a person is present when a criminal act is committed does not make him an aider and abettor unless he does some overt act in furtherance of the aggravated murder as charged in Counts 1 and 2, aggravated robbery as charged in Counts 3, 4, and 5, the kidnaping as charged in Counts 6 and 7 of the indictment.  It would also include the lesser-included offenses.

\*   \*   \*

Over act means any conduct when it is of such character as to manifest a purpose on the part of the actor that the . . . crime charged be committed.

Purpose.  A person acts purposely when it is his specific intention to cause a certain result.  Purpose is a decision of the mind to do an act or acts with a conscious objective of producing a specific result.  To do an act purposely is to do it intentionally and not accidentally.  Again, purpose and intent mean the same thing . . . But the purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

The purpose with which a person does an act is determined from the manner in which it is done and the conduct engaged in and all the other facts and circumstances in evidence.

Participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.

\*   \*   \*

Mere presence.  The mere presence of an accused at the scene of a crime and the fact that he was acquainted with the perpetrator is not sufficient proof in and of itself that he was aider and abettor.

\*   \*   \*

40

> Mere approval or acquiescence, without express
> concurrence of the doing of something to contribute to an
> unlawful act, is not an aiding and abetting of the act.

(Tr. 938-40.)

The state appellate court rejected this argument, noting that the trial court "gave

a full instruction on 'purpose' when giving the jury charge on aiding and abetting."

*Clement*, 2012 WL 504199 at * 3.  In his habeas petition, Clement does not explain

how, in light of the court's instruction on purpose, the jury instruction rendered his trial

fundamentally unfair.  *See Doan*, 548 F.3d at 455.  Indeed, he does not even

acknowledge that the trial court gave the instruction.  Rather, he points to two Sixth

Circuit cases, neither of which supports his argument.  In *Clark v. Jago*, 676 F.2d 1099,

1105 (6th Cir. 1982), the Sixth Circuit granted habeas relief on the basis that the state

trial court's instructions permitted the jury to infer the petitioner's culpable mental state

from his co-defendant's conduct, or to determine that it was sufficient to convict the

petitioner of aiding and abetting aggravated murder if they determine that his co-

defendant had the requisite intent to kill.  Similarly, in *Bell v. Morris*, 923 F.2d 854 (6th

Cir. 1991) (unpublished decision), the Sixth Circuit granted habeas relief where the jury

instructions did not require the jury to find that the petitioner had an intent to kill the

victims, but, rather, permitted the jury to infer such intent from the petitioner's

participation in a violent crime likely to result in death, or from the intent of his co-

defendants.  Nothing in the instruction at issue in this case invited the jury to engage in

this impermissible analysis of Clement's mental state.  Rather, the instruction made it

clear that the jury was to consider Clement's purpose and intent  – evidenced by his

41

own overt acts – in deciding whether to convict him of aiding and abetting.

Further, Clement misstates the holding of the Sixth Circuit's decision in *Lockett v. Arn*, 740 F.2d 407(6th Cir. 1984).[7]  Clement contends that, in that case, the Sixth Circuit determined that the petitioner had been deprived of due process by an Ohio jury instruction that permitted the jury to presume that, as an aider or abettor, she had acquiesced in whatever was necessary to accomplish the object of the criminal enterprise of herself and her co-defendants.  This is not correct.  Although the petitioner in *Lockett* argued that the jury instruction deprived her of due process, the Sixth Circuit declined to consider the argument because it was procedurally defaulted.  740 F.2d at 411.

Finally, there is no merit to Clement's claim that his appellate counsel was ineffective in failing to raise this claim on direct appeal.  Clement does not explain how he was prejudiced by the omission of this argument, particularly in light of the appellate court's conclusion that the trial court's instruction had, in fact, required a culpable mental state to convict Clement of aiding and abetting.  Clement has not demonstrated that his appellate counsel's performance was constitutionally deficient under the *Strickland* standard.

-----

[7] In his petition, Clement cites to *Lockett v. Arn*, 728 F.3d 266 (6th Cir. 1984), which was an earlier decision from the Sixth Circuit granting the petition for habeas relief. However, in the second *Lockett* decision, issued after rehearing and rehearing *en banc*, the Sixth Circuit vacated its earlier decision in the case.  *See Lockett*, 740 F.2d at 408 ("Following this court's decision granting habeas relief to appellant Sandra Lockett, appellee moved for rehearing.  The appellee's motion is granted an the opinion and order of this court filed in this case on February 14, 1984 are vacated.").

### D.    Instruction on Flight (Ground Eight)

In his ninth ground for relief, Clement asserts that the state trial court deprived

him of due process when it instructed the jury on flight.  During its instructions, the trial

court charged the jury as follows:

> Now, in this case, there may be evidence tending to indicate
> that Mr. Clement fled from the vicinity of the alleged crime.
>
> In this connection, you are instructed that flight in and of
> itself does not raise a presumption of guilt, but it may show
> consciousness of guilt or of a guilty connection with the
> crime.  If, therefore, you find that Mr. Clement did flee from
> the scene of the alleged crime, you may consider this
> circumstance in this case in determining the guilt or
> innocence of the defendant.

(Tr. 942.)  Clement argues that the flight instruction was "inherently misleading," and

"should not have been given at all."

In its decision denying Clement's Rule 26(B) Application, the state appellate

court noted that, although older case law held that "circumstances of flight is as

consistent with the theory of innocence as of guilt," that view was no longer current.

*Clement*, 2012 WL 504199 at * 3.  The court cited to authority generally concluding that

"the flight of an accused from justice is admissible as evidence for the consciousness of

guilt."  *Id*.

In his § 2254 petition, Clement again cites to *Wong Sun v. United States*, 371

U.S. 471 (1963), and *Dillon v. State*, 7 Ohio Law Abs. 46 (Ohio App. Ct. 1928).  In

*Wong Sun*, the Supreme Court concluded that the defendant's flight from the scene

was not sufficient to constitute probable cause for his arrest because the officer had not

properly identified himself and, thus, the defendant's flight "must be regarded as

43

ambiguous conduct," because his flight "afforded no sure[] . . .  inference of guilty

knowledge."  371 U.S. at 482.  In *Dillon*, an Ohio appellate court concluded that there

was insufficient evidence to support the defendants' conviction for manufacturing liquor,

despite testimony that they had fled from the area where the liquor was manufactured,

in part because "the circumstance of flight is as consistent with the theory of innocence

as of guilt."  7 Ohio Law Abs. at 46.

Although these cases support an argument that evidence of flight can be

consistent with both innocence and guilt, they do not hold that a flight instruction is

prohibited by the Constitution.  Clement points to no case law prohibiting such an

instruction.  The Sixth Circuit has determined, on habeas review, that, where a jury

instruction on flight "directed the jurors to make their own determination as to whether

[the petitioner] did in fact flee and, if so, what state of mind such flight evinced," that

instruction "was not so prejudicial as to render the entire trial fundamentally unfair."

*Burton v. Renico*, 391 F.3d 764, 778-79 (6th Cir. 2004).  Here, the trial court instructed

the jurors that they were to determine whether Clement fled from the scene of the

shooting and, if so, whether that flight was evidence of guilt.  Given this, Clement

cannot establish that the trial court's instruction rendered his trial fundamentally unfair,

and this claim lacks merit.[8]

Further, this claim lacks merit as a basis for asserting ineffective assistance of

---

[8] Clement briefly argues that, in giving the instruction, the trial court "usurped" the fact finding function of the jury by "assuming that it was [Clement] who fled."  (Traverse at 15, Doc. No. 9.)  In addition to being unexhausted and procedurally defaulted, this claim lacks any support in the record, as the trial court's instruction clearly directed the jurors that they were to determine whether Clement had fled the scene of the shooting.

44

appellate counsel.  As the state appellate court noted in its decision denying Clement's Rule 26(B) Application, Ohio law permits a flight instruction where the evidence supports it.  *State v. Jefffries*, 913 N.E.2d 493, 505-06, 182 Ohio App.3d 459, 476 (Ohio App. Ct. 2009).  Here, at trial, a South Euclid police officer testified that, as officers approached the home where the shooting occurred, an African-American male ran out of the house and fled to an unknown location.  (Tr. 351-52.)  Accordingly, evidence at trial supported a flight instruction, and Ohio law permitted the trial court to give the instruction to the jury.  In light of Ohio law on this issue, Clement cannot show that he was prejudiced by his appellate counsel's failure to raise this issue on direct appeal. Accordingly, Clement has failed to demonstrate that his appellate counsel's performance was constitutionally deficient under the *Strickland* standard.

### E.  Trial Counsel's Alleged Errors (Ground Nine)

In his ninth ground for relief, Clement asserts that his trial counsel was ineffective in failing to: (1) object to the trial court's jury instruction on aiding and abetting; (2) request an instruction on Tramel Wallace's identification of Clement; and (3) file a motion to suppress Dominic Rodger's identification of Clement.  As noted above, he also claims these grounds serve as a basis for a claim of ineffective assistance of appellate counsel.  The deficient performance/prejudice test of *Strickland* applies to these claims.  Further, because it appears the appellate court may have addressed these as independent claims, we will address the underlying merits.

### i.  Jury Instruction on Aiding and Abetting

In its decision denying his Rule 26(B) Application, the state appellate court

45

determined that this claim lacked merit because the trial court instructed the jury on "purpose" in the context of aiding and abetting.  Clement does not explain how this decision was contrary to, or an unreasonable application of, clearly established Supreme Court law.  Given that the trial court did not err in its instruction on aiding and abetting, Clement cannot reasonably argue that his trial counsel was ineffective in failing to object to the instruction.  Accordingly, this ground for relief lacks merit, both as an independent basis for relief and as a ground for claiming ineffective assistance of appellate counsel.

### ii.  Tramel Wallace Identification

During Clement's trial, Tramel Wallace – who had driven Gregory Williams to the scene of the shooting and then to the South Euclid police station after the shooting – testified regarding the events of that day.  He testified that, after he and Williams arrived at the house on Green Road, one individual got into the back seat of the car while a second individual approached the passenger side of the vehicle.  (Tr. 287.)  The individual in the back seat pulled out a gun and said, "You know what this is."  (*Id*.)  Eventually, the second individual stuck a gun through the open side passenger window and shot Williams in the chest.  (Tr. 291-92.)  The prosecutor asked Wallace whether he would recognize that individual if he saw him again, and Wallace responded, "Maybe.  I haven't seen any pictures or anything."  (Tr. 295.)  Then, the prosecutor asked Wallace whether he saw the individual in the courtroom.  (*Id*.)  Before Wallace could respond, Clement's trial counsel requested a sidebar.  (*Id*.)  Thereafter, outside the presence of the jury, the court and counsel for both sides discussed the fact that

46

Wallace had not, to that point, been able to identify Clement as the shooter.  (Tr. 299-308.)  The trial court asked Wallace, "What makes you today have a different opinion of knowing who that person might be?" (Tr. 308.)  Wallace responded, "Well, because obviously you have a guy sitting right there." (*Id*.)

During continued discussion outside the presence of the jury, Clement's trial counsel claimed that Wallace "looked at [the defense table] and did identify" Clement after the prosecutor asked Wallace whether the shooter was in the courtroom.  (Tr. 311.)  Defense counsel argued that Clement was entitled to a mistrial because the jury believed that Wallace had identified Clement as the shooter.  (Tr. 312.)  The trial court declined to grant a mistrial, indicating that, instead, the court would instruct the prosecutor to ask Wallace, again, whether he recognized anyone and, "the answer is going to be no. . . . I don't think this jury has heard anything that's going to prejudice them." (Tr. 313.)  Thereafter, the trial court instructed Wallace to testify truthfully regarding his ability to identify Clement as the shooter:

> Q:   Mr. Wallace . . . the reality is . . . you really cannot identify Mr. Clement other than the fact that he's the gentleman sitting there?  You know, I could have removed Mr. Clement and put another person in that chair and it wouldn't have been Mr. Clement and you would have said the same thing, wouldn't you have?
>
> A:   Yes.
>
> Q:   So I'm going to let the State ask some questions, the defense is going to ask some questions, too, regarding this, but the reality is your answers should be consistent with the truth, and the truth is you cannot identify him.
>
> A:   Right.

47

| Q: | So that's my instruction to you . . . however you want to answer the question in your own words.  You cannot make the identification – |
| A: | Right. |
| Q: | – nor could you make it any other day, right? |
| A: | Right. |
| Q: | I want you to answer consistently. |
| A: | Okay. |
| Q: | Do you understand? |
| A: | Yeah. |

(Tr. 314-15.)  After the jury returned, Wallace resumed his testimony, and neither party revisited the issue of whether he could identify Clement as the individual who shot Williams.

Clement argues that his trial counsel was ineffective in failing to request an instruction on Wallace's identification of Clement.  The state appellate court noted that the trial court had instructed Wallace to testify truthfully that he could not identify Clement as the shooter.  *See Clement*, 2012 WL 504199 at * 3.  In his habeas petition, Clement contends that, "although the [trial] court stated that it would instruct on identification, there was no instruction on identification."  (Traverse at 15, Doc. No. 9.) This is not supported by the record, which reflects that, although defense counsel asserted that a curative instruction would not be sufficient to avoid prejudice to Clement, the trial court concluded that there had been no prejudice.  (Tr. 313.)  Clement does not explain how the outcome of his trial would have been different if the trial court had given some sort of curative instruction to the jury, particularly in light of the other

48

identification evidence in the record.  Accordingly, Clement has failed to demonstrate that, in rejecting this basis for his ineffective assistance of trial counsel claim, the state appellate court's decision was either an unreasonable application of, or contrary to, established Supreme Court law.  Nor has he demonstrated that his appellate counsel's failure to raise this claim was constitutionally deficient.  Thus, this ground for relief lacks merit, both as an independent basis for relief and as a ground for claiming ineffective assistance of appellate counsel.

### iii.    Dominic Rodgers Identification

During Clement's trial, Dominic Rodgers – who was 14 years old and attended an alternative school at the time of the shooting – testified that, on the day of the shooting, his brother, Alfred Rodgers, was at home with three friends: a person Dominic knew as "Meech," a person he knew as "Bulldog" and third friend.  (Tr. 394.)  Dominic testified that, at some point, Alfred, Bulldog and the third friend went outside.  (Tr. 410.)  Eventually, Dominic looked out of the bathroom window of the house and saw Alfred standing in the driveway while the third friend was running beside a car.  (Tr. 413.)  Dominic could not see Bulldog.  (Id.)  Dominic testified that, eventually, the police came to his home and arrested him.  (Tr. 419-20.)  As Dominic began to testify that detectives showed him photographs of people, defense counsel requested a sidebar to make an objection.  (Tr. 420.)

At sidebar, defense counsel conceded that Dominic had identified Clement as the third friend, but argued that the method used by detectives to obtain Dominic's identification of Clement was improper because it involved only one photograph rather than array.  (Tr. 420-21.)  Defense counsel requested that the court voir dire Dominic

regarding his ability to identify Clement.  (Tr. 421.)  The State conceded that Dominic

had identified Clement from a single photograph, but noted that Dominic knew Clement

in other contexts.  (Tr. 426-27.)

The trial court questioned Dominic, outside the presence of the jury, regarding

whether he knew the friend of his brother who was not Bulldog and who was outside the

house on the day of the shooting.  (Tr. 430.)  Dominic testified that the friend had been

over to his house before, and that the friend was related to Dominic's sister's boyfriend.

(Tr. 430-31.)  Dominic testified that he had told police detectives that he knew the

person, and had identified the friend as the individual in one of the photographs the

detectives had shown him.  (Tr. 431-32.)  Dominic reiterated to the court that the person

in the photograph was the friend of his brother who was not Bulldog and who was at his

house on the day of the shooting.  (Tr. 434.)

The trial court declined to suppress Dominic's identification, noting that he had

an independent basis for identifying Clement:

> Even aside from the fact that there wasn't a motion to
> suppress this matter as being unduly influenced, the Court is
> going to find . . . that it's not.  That, in fact, as much as
> [Dominic] is having a hard time up here, my individual voir
> dire of him [shows that] he, in fact, knows who the other
> person is.  He knows by the relationship that I asked and
> that is written in the detective's report.
>
> It wasn't as if a picture was thrown in front of him and said,
> ["]This is the guy.["].  He actually described the person in a
> relationship manner and that person was also then identified
> by his brother as the same person.

(Tr. 436.)  Thereafter, during his testimony, Dominic identified Clement as the other

friend who was at the house on the day of the shooting.  (Tr. 442-45.)

50

In his habeas petition, Clement argues that his trial court was ineffective in failing to move to suppress Dominic's identification of Clement.  In rejecting this claim in his Rule 26(B) Application, the state appellate court noted that the trial court had conducted "an extensive voir dire" on Dominic's ability to identify Clement and "ruled that Dominic in fact knew Clement because there was a relationship between them."  *Clement*, 2012 WL 504199 at *4.  In light of the trial court's investigation of Dominic's ability to identify Clement before permitting the identification during his testimony, Clement cannot show that a pre-trial motion to suppress Dominic's testimony would have affected the outcome of his trial.  Accordingly, Clement cannot demonstrate that, in rejecting this basis for his ineffective assistance of trial counsel claim, the state appellate court's decision was either an unreasonable application of, or contrary to, established Supreme Court law.  Nor has he demonstrated that his appellate counsel's failure to raise this claim was constitutionally deficient.  Thus, this ground for relief lacks merit, both as an independent basis for relief and as a ground for claiming ineffective assistance of appellate counsel.

### 5. Tenth Ground for Relief - Sentencing

In this case, Count One charged Clement with aggravated murder under Ohio Rev. Code 2903.01(A), which provides that "[n]o person shall purposely and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."  Count Two charged Clement with aggravated murder under subsection (B) of Ohio R.C. § 2903.01, which prohibits "purposely caus[ing] the death of another . . . while committing or attempting to commit," *inter alias*, aggravated robbery, as defined in Rev. Code §§ 2911.01(A)(1) and/or 2911.01(A)(3).  That code

section defines aggravated robbery as "attempting or committing a theft offense, as defined in [Ohio Rev. Code § 2913.01]" while either: possessing and displaying or brandishing a deadly weapon (subsection (A)(1)), or inflicting serious physical harm on another (subsection (A)(3)).  The trial court agreed to instruct the jury on the lesser-included offense of murder on Count One, which prohibits "purposely causing the death of another," without the element of prior calculation and design.  Ohio Rev. Code § 2903.02(A).  The jury acquitted Clement of aggravated murder in Count One, instead convicting him of the lesser-included offense of murder.  (Tr. at 1025-28.)  The jury convicted Clement of aggravated murder on Count Two.  (*Id.*)

Clement contends that the trial court deprived him of due process when it sentenced him for aggravated murder rather than murder.  In support of his argument, Clement cites to cases in which Ohio courts conclude that a defendant may not be convicted of, and sentenced for, murder and involuntary manslaughter, *State v. Duncan*, 796 N.E.2d 1006, 154 Ohio App.3d 254, or involuntary manslaughter and reckless homicide, *State v. Carusone*, No. C-010681, 2003 WL 832061, *8 (Ohio App. Ct. March 7, 2003), arising out of the same killing.  Although Clement's argument is not entirely clear, his reliance on these cases suggests that he contends that his acquittal of aggravated murder on Count One was inconsistent with his conviction for aggravated murder on Count Two.

In its decision denying his Rule 26(B) Application, the state appellate court concluded that, even if the jury's verdict was inconsistent, that inconsistency did not constitute error because Clement had been convicted on some counts and not others, and because his conviction would generally be upheld.  *Clement*, 2012 WL 504199 at

52

*4 (citing *State v. Sailor*, No. 83552, 2004 WL 2340113, *10 (Ohio App. Ct. Sept. 30,2004)).  Further, the court observed that the evidence supported Clement's conviction for aggravated murder on Count Two, and that, with respect to the jury's verdict convicting Clement of murder on Count One, it was "understandable how on these facts the jury might conclude that the state had not proven the element of prior calculation and design beyond a reasonable doubt."  *Id*.

The Supreme Court has long held that "[c]onsistency in the verdict is not necessary.  Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, 393 (1932).  Rather, "[t]he most that can be said [about an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction, the jury did not speak [its] real conclusions, but that does not show that they were not convinced of the defendant's guilt."  *United States v. Powell*, 469 U.S. 57, 64-65 (1984) (citation omitted).

Given the evidence in the case, the jury could have reasonably determined that the State did not adduce sufficient evidence to establish that Clement acted with prior calculation and design and, thus, opted to convict him of the lesser-included offense of murder on Count One.  Further, given the evidence that Clement shot Williams after Clement's accomplice pulled a weapon on Williams and told him, "You know what this is," the jury could have reasonably determined that Clement purposely caused Williams's death while attempting or committing a theft offense, and convicted him of aggravated murder in Count Two.  The two counts charged different offenses – (1) murder and (2) aggravated murder arising out of an aggravated robbery – and Clement points to no case law prohibiting his conviction on both counts.  Accordingly,

Clement has failed to demonstrate that, in rejecting this argument in his Rule 26(B) Application, the state appellate court's decision was either contrary to, or an unreasonable application of, well established federal law.  This ground for relief lacks merit.

### 6.    Eleventh Ground for Relief - Discovery Violation

Finally, Clement argues that the state trial court erred when it declined to grant a mistrial on the basis of Tramel Wallace's testimony regarding whether he could identify Clement as the individual who shot Gregory Williams.   Clement asserts that, because the State had not previously informed the defense that Wallace would be making an in-court identification of Clement, his counsel had not received discovery regarding that identification.  The state appellate court rejected this argument on the basis that Clement failed to demonstrate prejudice resulting from the lack of discovery.  *Clement*, *2012 WL 504199 at \*4*.

To the extent that Clement asserts that the prosecutor in his case violated state discovery rules, he is not entitled to habeas relief on this claim, because it is well settled that there is no general constitutional right to discovery in criminal cases.  *Weatherford v. Busey*, 429 U.S. 837, 846 (1977).  To the extent that Clement claims that the trial court's denial of his motion for a mistrial violated his right to due process, the claim lacks merit because Clement was not prejudiced by Wallace's testimony.  The record does not reflect that Wallace actually identified Clement prior to defense counsel halting proceedings and requesting a sidebar.  Further, other witnesses identified Clement as either being present at the scene of the shooting, or as actually firing into Williams's

54

vehicle.  Clement has failed to demonstrate that the state appellate court's decision was either contrary to, or involved an unreasonable application of, established Supreme Court law.

## VI. Conclusion.

For the reasons given above, Clements's petition should be dismissed with prejudice.


Date: September 24, 2013                             /s/ Nancy A. Vecchiarelli
                                                     United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**